(48 App. Div. 419.)

### HEFFERNAN v. ARNOLD et al.

(Supreme Court, Appellate Division, Third Department.   March 20, 1900.)

1. NEGLIGENCE—EVIDENCE.

   Defendants, as truckmen, were engaged in slowly backing, over nearly level ground, a truck loaded with a long, ponderous iron girder, in such a manner that the end would enter an opening in a building. A few days before defendants had delivered at the same place two similar girders, placing them on a level, along the street and next the curb nearest the building, one above the other, separated by square sticks of timber. Round iron rollers had been substituted for these sticks without defendants' knowledge, the girders being blocked with wooden blocks. To reach the opening in the building, it was necessary that the end of the girder on the truck should pass about two feet from one end of the girders on the ground. When this distance had been reached, the rear wheels of the

truck suddenly slipped on the pavement, and the end of the moving girder struck the end of the upper girder on the ground, starting it on the rollers, by reason of which it struck plaintiff, and injured him. Plaintiff had been in a place removed from danger, and in plain view of defendants and of the truck, until an instant before the accident, when he voluntarily stepped to the ground near to the upper girder, in a position to be injured. *Held*, that defendants were not guilty of negligence, nor liable for the injury.

**2. SAME—WORK NOT OBVIOUSLY DANGEROUS—STANDARD OF CARE.**

Where the work done is not obviously dangerous to others, the standard of care to be observed is such reasonable care as a prudent man would ordinarily take in doing such work.

Parker, P. J., dissenting.

Appeal from trial term, Albany county.

Action by James Heffernan against William D. Arnold and Frank Schoonmaker. From a judgment in favor of plaintiff, defendants appeal. Reversed.

The action is brought to recover damages for injuries to plaintiff, claimed to have been caused by the defendants' negligence. Pine street and Lodge street, in the city of Albany, cross each other at nearly right angles; Pine street running easterly and westerly, and Lodge street northerly and southerly. A school house was in process of construction upon the corner facing upon Pine and also facing upon Lodge street. The defendants, as truckmen, were employed by the builder to convey from the railroad depot, and deliver at this building, some heavy iron girders. These girders were 4½ feet wide, with flanges of some 14 inches, and about 60 feet long, each weighing about 12 tons. A few days prior to the accident two girders had been delivered by the defendants to the builders. These had been placed on their flat sides along Lodge street, next to the curb nearest to the building, and when placed by defendants were practically on a level. One was placed upon the top of the other, with square sticks of timber 4x6 or 6x6 crosswise between both girders, pitching slightly westerly, or towards the curb. They were received by the builder, so placed, and defendants had nothing to do with them thereafter. The day before the accident the builder, unknown, so far as appears, to defendants, had substituted iron rollers for the pieces of square timber between the girders, and blocked the girders with wooden chuck blocks. On the day of the accident the defendants delivered a third girder of like dimensions and weight to the others, but, under the directions of the builder to deliver the girder with one end at an opening of the building, so placed the truck with the girder thereon that by backing on nearly level ground the end going into the building would pass some two feet west of the north end of the two girders lying in the street. To back the loaded truck required a team of horses on the pole and a team of horses fast to the truck, both drawing backward. The movement was slow. When the end of the girder on the truck was within two feet of the end of the girders on the ground, the rear wheels of the truck suddenly slid on the pavement, there slightly inclining to the east, and brought the south end of the girder on the truck in contact with the north end of the upper girder lying on the ground, and started a movement on the rollers which carried the south end of the upper girder into contact with plaintiff, who was thereby injured. The plaintiff, with another man, was in charge of a heavy stone truck, engaged in delivering heavy stone to the same building. While defendants were backing the girder into place, the stone truck was near the south end of the two girders, in Lodge street, and by the side of the girders, some two feet away. Both men were on the stone truck, fixing rings in the heavy stone preparing to unload, up to the moment before the accident. The plaintiff changed his position, and stepped off the wagon upon the ground, and that instant was struck by the girder. While the men were upon the stone wagon they were in plain view of defendant Schoonmaker, who had charge of the backing truck and girder, and the backing truck and girder were in plain view of these men. The distance between them was some 50 or 60 feet.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

Edward W. Douglas (Lewis E. Carr, of counsel), for appellants.
Mark Cohn, for respondent.

KELLOGG, J.  The defendants were not engaged in a work in itself apparently dangerous to others.  They made use of no dangerous implement or method.  The place and surroundings had in them no element of danger, so far as a prudent man, looking before the accident, could judge.  With some difficulty, because of its great weight, the girder upon the truck had been moved about so that by a backward movement of the truck its southerly end would point towards the opening in the building, where the builder wanted it, and in moving towards the opening would pass some 2 feet westerly of the girders on the ground.  This was the situation when the south end of the girder on the truck was about 10 feet away from the north end of the girders lying in the street.  These girders on the ground presented a fairly solid obstacle, $4\frac{1}{2}$ feet wide, and about 3 feet high, the total weight of which was some 24 tons.  The defendants had placed them there in a substantial manner, and it is not apparent that they knew that either girder had been disturbed.  Nor was the danger to be apprehended to any one such that reasonable prudence required the defendants to investigate as to whether they had been disturbed.  The distance to be covered by the backward movement of the truck and girder was 10 feet.  The means was a dead haul on practically level ground, slightly inclining sideways to the east.  One team of horses pulling back one team at the pole backing, the movement was to be slow, and without momentum.  When the horses stopped, the truck and girder would stop.  If the cramping of the forward wheels of the truck should cause the end of the girder to come in contact with the end of the girders on the ground, the impact would be slight, with the only result that the work would have to be done over again.  The street was blocked, and no teams or persons were passing.  The plaintiff and his companion were on the top of their stone wagon at work.  The girders on the ground slightly inclined to the west, away from the stone wagon.  No one was between the girders and the curb.  What possible danger was there for an ordinarily prudent man to apprehend?  The truck and girder were moved backward, as intended.  The 10 feet was covered in a short space of time.  As the end of the girder approached the building, and when near the north end of the girders on the ground, the rear wheels of the truck slid quickly and suddenly sideways upon the pavement, and to the east, and the end of the girder on the truck struck the end of the girders in the street—the upper girder— with such force as to cause the south end of the upper girder to fall to the ground in the direction of the stone truck upon which plaintiff had been at work.  At the same instant the plaintiff voluntarily stepped off his wagon to the ground for some purpose, and was struck by the girder, and injured.

Judging of the whole transaction, from the standpoint furnished

by and after the accident, it is seen that the approximate cause was the sliding of the rear wheels of the truck laterally on the pavement. That movement, combined with the unstable condition of the upper girder in the street,—unstable, presumably, because the change made by the builder in substituting round iron rollers under it in place of the square wooden pieces furnished by defendants,—and both combined with the movement of the plaintiff from a place of safety to one of danger at the instant the girder took a fall of some two feet, brought about the injury which plaintiff suffered. The case is exceptionally free from dispute over any material fact. The standard by which the facts are to be judged in determining whether the defendants were culpably negligent is not uncertain. Reasonable care, such as a prudent man would ordinarily have taken in doing such work, is the measure to be used. This is broadly distinguishable from the standard of extraordinary care required in doing things obviously dangerous to others, and more broadly distinguishable from absolute insurance. It is, nevertheless, a standard which the court must recognize in every given case. It will not do to shirk the duty, and turn over to a sympathetic jury the facts, with a definition of the measure, with tacit permission to stretch the standard into a measure of extraordinary care or one of actual insurance, and so break down the only safeguard the citizen has in doing business of any kind. Where the facts are undisputed, as here, the case presents not infrequently a question of law, and I think such was this case, so far as negligence attributable to defendants is concerned.

To hold defendants culpable for failure to anticipate the sliding of the two rear wheels of the truck; failure to anticipate a lateral impact of the end of the moving girder upon the girder in the street with force sufficient to move the stationary girder off its foundation; failure to discover that it was not securely placed; failure to anticipate that a fall of two feet of one end or side of this girder would injure the plaintiff; failure to anticipate that the plaintiff would at the moment leave a place of safety, and be in a position to be injured,—would, it seems to me, be holding that the apprehension of the defendants should have been as comprehensive as actual knowledge of all things which were developed, and could have been developed, only by the accident itself. This is but another definition of "absolute insurance" against one's acts of omission or commission. It is not the standard of reasonable care, and goes beyond the limit of extraordinary care. I think the court erred in certifying to the jury that the facts, in any view of them, measured by the standard of reasonable care applied before the accident, warranted a verdict that defendants were culpably negligent, and for that reason the judgment should be reversed.

Judgment and order reversed upon the law and facts, and a new trial granted, costs to abide the event. All concur, except PARKER, P. J., who dissents.